UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFERY SCOTT BUSH,

                      Plaintiff,

v.                                                      Case No. 5:14-CV-0601 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                      Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

OLINSKY LAW GROUP                    JUSTIN M. GOLDSTEIN, ESQ.
 Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        PETER W.JEWETT, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Jeffery Scott Bush ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 31, 1965. (T. 231.) He completed high school. (T. 253.) He worked full time as a radiology assistant, landscaper, and dishwasher. (T. 254.) Generally, Plaintiff's alleged disability consisted of a back impairment. (T. 253.) His alleged disability onset date is July 6, 2009. (T. 248.) His date last insured is March 31, 2012. (T. 249.)

### B. Procedural History

On February 9, 2011, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("SSD"); he also filed a Title XVI application for supplemental security income ("SSI"). His application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 7, 2012, he appeared before ALJ Scott M. Staller. (T. 84-106.) On August 30, 2012 ALJ Staller issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-27.) On March 27, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of degenerative disc disease ("DDD") of the lumbar spine with radiculopathy, a history of neck pain with right cervical radiculopathy, alcohol

abuse in early remission, cannabis abuse in early remission, cocaine abuse in early remission, and methamphetamine abuse in remission. (*Id.*) The ALJ determined Plaintiff's medically determinable impairments of depression and anxiety were non-severe. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. (T. 19)[1] Specifically, Plaintiff was limited to a job where he could sit or stand alternatively every 30 minutes so long as he did not have to leave his work station; he could never climb ladders, ropes, or scaffolds; he could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl; he could frequently balance; he must avoid concentrated exposure to dangerous moving machinery and unprotected heights; he was limited to frequent reaching, handling, and fingering with his right, non-dominant extremity. (*Id.*) Fifth, the ALJ found Plaintiff had past relevant work as a patient transporter and was unable to perform his past relevant work. (T. 22.) However, the ALJ determined considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination is unsupported by

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

substantial evidence and is legally deficient; specifically, (1) the ALJ failed to properly evaluate the opinion evidence of Rinoo Shah, M.D. and Look Persaud, M.D. and (2) the RFC is unsupported by substantial evidence. (Dkt. No. 10 at 11-21 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ failed to apply the appropriate legal standards when finding Plaintiff not fully credible. (*Id.* at 21-25.)

### B. Defendant's Arguments

In response, Defendant makes essentially three arguments. First, Defendant argues the ALJ properly discounted Dr. Shah's opinion. (Dkt. No. 13 at 4-7 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's credibility. (*Id.* at 7-9.) Third, and lastly, Defendant argues the ALJ properly developed the record. (*Id.* at 9-10.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or the decision was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the

4

correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520 and 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Evaluated Medical Opinion Evidence

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 4-7 [Def.'s Mem. of Law].) The Court adds the following analysis.

Plaintiff argues the ALJ failed in his analysis of treating physician Dr. Shah; specifically, the ALJ did not follow the Regulations in his analysis, the ALJ improperly focused on limited treatment notes, and the ALJ improperly relied on Plaintiff's activities of daily living to undermine Dr. Shah's opinion. (*Id.* at 4-7.)

6

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Charter*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir.1998]).

Plaintiff established care with Dr. Shah in August of 2009. (T. 372.) Plaintiff complained of low back pain, leg pain and numbness. (*Id.*) Dr. Shah's notations indicated Plaintiff's back pain was well controlled prior to reinjuring himself while moving furniture in July of 2009. (*Id.*) Dr. Shah referred Plaintiff to pain management, prescribed narcotics, and scheduled a facet block and epidural steroid injection. (T. 375.) Plaintiff followed up in October of 2009. (T. 376.) Plaintiff reported complete pain relief in his back after the injection, but still reported left leg pain. (*Id.*) Dr. Shah noted normal gait and normal strength; however, he also noted Plaintiff's lumbar spine was tender to palpation and Plaintiff had reduced range of motion in his trunk. (*Id.*) Dr. Shah referred Plaintiff to neurosurgery for a consultation. (*Id.*)

Medical imaging conducted in October of 2009 showed degenerative changes in the lumbar spine, moderate stenosis at L2-L3 and L3-L4, retrolisthesis of S1 over L5 with facet joint hypertrophy which was causing bilateral moderate neural foraminal narrowing. (T. 399.)

Plaintiff met with Erik Gregorie, M.D. in April 2010 for a surgical evaluation. (T. 322.) Dr. Gregorie reviewed medical imaging and recommended Plaintiff undergo a L4-S1 fusion. (*Id.*) Dr. Gregorie noted during his physical exam that Plaintiff was in no acute distress, had normal station and gait, had normal muscle strength in both arms and legs with some subjective weakness in the iliopsoas muscle, and had normal motor tone. (T. 319.) Upon further review of the medical imaging at a subsequent appointment, Dr. Gregorie concluded a fusion would not be the best course of action and stated Plaintiff would benefit from a L2-L3 laminotomy. (T. 320, *see also* T. 380.) The record does not contain treatment notes from the actual surgery, but Dr. Gregorie's August 2010 notation referenced the procedure as did Dr. Shah's September 16, 2010 notation. (T. 315, 380.)

In August 2010 Plaintiff returned to Dr. Gregorie with complaints of back and leg pain. (T. 315.) Dr. Gregorie stated Plaintiff's complaints were in stark contrast to Plaintiff's July visit where he was "quite satisfied" with the "resolution of his left leg pain and minimal back pain." (*Id.*)[2] Plaintiff indicated he no longer had left leg pain, but instead had right leg pain. (*Id.*) Dr. Gregorie expressed concerns regarding Plaintiff's complaints of pain because, Plaintiff's "anatomy [was] no different than it was . . . in July[,] yet [Plaintiff's] complaints of discomfort [were] in marked contrast." (*Id.*) Dr. Gregorie also expressed concerns because Plaintiff did not follow proper post-operative

---

[2] The record does not contain Dr. Gregorie's July 2010 treatment notes.

care. (*Id.*) Dr. Gregorie described Plaintiff as agitated, he supplied Plaintiff with pain medication, and a referral back to Dr. Shah for a spinal injection. (*Id.*)

On September 16, 2010, Plaintiff returned to Dr. Shah with complaints of low back pain and left leg pain, he also complained of an abnormal gait. (T. 358.) Plaintiff stated he ran out of pain medication. (*Id.*) Dr. Shah noted tenderness on palpitation of the lumbar spine. (*Id.*) Dr. Shah prescribed Oxycontin, Percocet, Neurontin and Ativan. (*Id.*) On September 21, 2010, Dr. Shah performed a steroid injection. (T. 371.)

On October 21, 2010, Plaintiff reported his leg pain was resolved, but he still experienced low back pain. (T. 357.) Plaintiff reported he self-medicated with alcohol and did not take any other medications. (*Id.*) On January 6, 2011, Plaintiff presented to Dr. Shah for a refill request of Percocet. (T. 356.) Plaintiff stated traction, heat packs, and medication helped the pain. (*Id.*) Dr. Shah noted Plaintiff's lumbar spine was tender to palpitation. (*Id.*) On January 11, 2011 Plaintiff underwent another steroid injection. (T. 369.) During his February 3, 2011 follow up, Plaintiff noted the most recent injection did not help and he reported pain in his lower back and hip. (T. 355.)

On March 3, 2011, Plaintiff reported low back pain and pain in his legs, and he missed his appointment for a steroid injection. (T. 386.) Dr. Shah again noted tenderness on palpitation of lumbar spine. (*Id.*) Plaintiff underwent a steroid injection on March 29, 2011. (T.410.) On May 10, 2011, Plaintiff reported the injection only provided relief for a few days and the pain medication only lasted a few hours. (T. 387.) Dr. Shah noted Plaintiff's pain was worse, but he was functionally stable. (*Id.*)

In December of 2011, Plaintiff reported significant pain and wished to pursue a spinal cord stimulator. (T. 389.) On March 8, 2012, Plaintiff reported he had "100%" pain

9

relief with the spinal cord stimulator and Dr. Shah described him as "ebullient." (T. 390.) On May 10, 2012, Plaintiff informed Dr. Shah he felt great and was walking faster. (T. 391.) Dr. Shah noted Plaintiff had excellent relief with the spinal cord stimulator. (*Id.*) On June 12, 2012, Plaintiff informed Dr. Shah his back and hip were bothering him and he could tell the battery in the stimulator was dying. (T. 417.)[3]

    Dr. Shah completed a medical source statement on June 12, 2012. (T. 347-349.) The statement indicated Plaintiff would be "off task" 50% of the time, assuming he worked a full time job. (T. 347.) The statement further indicated Plaintiff would be absent on average, more than three times a month and would only be capable of working less than ten hours in a forty hour week. (*Id.*) Regarding exertional limitations, Dr. Shah stated Plaintiff could sit for a total of four hours in an eight hour workday; stand for a total of four hours in an eight hours workday; and walk for a total of one hour in an eight hour workday. (T. 349.) Plaintiff could sit for one hour without interruption; stand for one to two hours without interruption; and walk for thirty minutes without interruption. (*Id.*) Regarding Plaintiff's ability to lift and carry, the statement indicated he could never lift and carry over twenty pounds. (*Id.*) Dr. Shah also checked a box indicating Plaintiff should "never" lift and carry one to ten pounds; however, he checked a box indicating he could "occasionally" lift and carry one to ten pounds. (*Id.*) Notations from Plaintiff's June 12, 2012 visit to Dr. Shah indicated the form was completed with "patient self-report of pain." (T. 418.) To be sure, subjective complaints of pain are one of many diagnostic tools a physician uses in treating patients; however, this statement indicates

---

[3] The June 12, 2012 treatment notes were first submitted to the AC and were not before the ALJ at the time of his decision. The AC reviewed the additional evidence and determined it did not provide a basis for changing the ALJ's decision. (T. 2) The Plaintiff does not argue the AC erred in its determination.

10

Dr. Shah completed the form, not on his own observations and medical testing, but on Plaintiff's allegations alone.

Here, the ALJ afforded "limited weight" to Dr. Shah's physical residual functional capacity assessment dated June 12, 2012. (T. 22.) The ALJ reasoned Dr. Shah's assessment was not reflective of the medical findings in the record and Plaintiff's activities of daily living. (*Id.*) Plaintiff argues the ALJ erroneously rejected Dr. Shah's medical source statement based on one treatment note and Plaintiff's activities of daily living, which Plaintiff contends are not "good reasons" for rejecting the opinion. (Dkt. No. 10 at 14 [Pl.'s Mem. of Law].)

To be sure, failure to provide "good reasons" for not crediting the opinion of plaintiff's treating physician is a ground for remand. *Snell v. Apfel*, 177 F. 3d 128, 133 (2d Cir. 1999). However, here the ALJ provided "good reasons" for the weight he afforded Dr. Shah's opinion.

First, the ALJ restated the factors for weighing medical opinions as set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in his decision; therefore, the ALJ was aware of, and intended to apply, the factors in the Regulations.[4] Further, the ALJ did not reject Dr. Shah's medical source statement based on one treatment note as Plaintiff alleges. (Dkt. No.10 at 15 [Pl.'s Mem. of Law].) The ALJ held Dr. Shah's treatment notes did not reflect the degree of limitations alleged in her medical source statement and the ALJ provided June 2012 treatment note as an example. (T. 22.) Elsewhere in his decision the ALJ discussed Dr. Shah's treatment in great detail. (T. 20-21.) Given how the ALJ discussed Dr. Shah's opinion in great detail throughout his decision, and provided the

---

[4] In his decision, the ALJ referred to the outdated Regulation citation of 20 C.F.R. §§ 404.1527(d) and 416.927(d).

June 2012 as an example of inconsistency, it is clear to this Court that the ALJ did not discount the whole of his opinion based on one treatment note.

Plaintiff further contends Dr. Shah's treatment notes actually support the limitations imposed. (Dkt. No. 10 at 15-16 [Pl.'s Mem. of Law].) Although treatment notes documented tenderness on palpitation of the spine, continued narcotic prescriptions, and limited range of motion in Plaintiff's trunk, the notations on a whole showed normal gait, normal strength, and relief with injections, medications and a spinal cord stimulator. The ALJ also relied on Plaintiff's activities of daily living which contrasted with Dr. Shah's strict limitations. Plaintiff stated he had no difficulty with personal care, could prepare meals on a daily basis, and could do household chores. (T. 22 *referring to* T. 263-264.)

The ALJ acknowledged Dr. Shah as a treating physician and discussed his treatment notes in great detail throughout his decision. The ALJ properly applied the factors laid out in the Regulations and provided "good reasons" for affording Dr. Shah's opinion "limited weight." Therefore, remand is not necessary as the ALJ properly evaluated Dr. Shah's opinion.

Plaintiff argues the ALJ failed to properly weight or evaluate consultative examiner, Dr. Persaud's, opinion. (Dkt. No. 10 at 18-19 [Pl.'s Mem. of Law].) To be sure, the ALJ did not afford Dr. Persaud's opinion a specific weight in his decision; however, a specific weight need not be assigned to each and every medical opinion, so long as the court can easily discern the ALJ's treatment of the opinion. *Curtis ex rel. B.C. v. Colvin*, 5:11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court was able to

discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed"). Here, although the ALJ did not afford a specific weight to Dr. Persaud's opinion, it is clear from the decision and RFC determination, that the ALJ took Dr. Persaud's prescribed functional limitations into consideration.

Dr. Persaud examined Plaintiff in April 2011, after Plaintiff's lumbar laminectomy and before he received his spinal cord stimulator. (T. 305-310.) Dr. Persaud observed limited range of motion in Plaintiff's cervical spine, lumbar spine, right shoulder, hips and knees. (T. 308.) He opined in his medical source statement, Plaintiff had no restrictions in sitting and standing; moderate restrictions in walking; marked restrictions in walking on uneven terrain, up inclines, ramps and stairs; moderate to marked restrictions in squatting; moderate restrictions in kneeling, crawling, bending, twisting, and turning. (T. 309.) Dr. Persaud opined Plaintiff had no restrictions for reaching with the left upper extremity, and moderate restriction for reaching with the right upper extremity; however, Plaintiff had no limitations in fine motor activities. (*Id.*) Dr. Persaud observed Plaintiff had marked restrictions in lifting, carrying, pushing and pulling. (*Id.*)

Although not discussed in great detail, the ALJ did discuss Dr. Persaud's examination in his decision in such a way that this Court was able to determine the ALJ's rationale for his decision based on the record. *See LaRock ex. rel. M.K. v. Astrue,* 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.").

As Defendant aptly points out, it is unclear from Plaintiff's argument exactly how Dr. Persaud's findings are inconsistent with the ALJ's RFC limiting Plaintiff to less than sedentary work. (Dkt. No. 13 at 6-7 [Def.'s Mem. of Law].) Plaintiff asserts the ALJ's RFC finding "does not address Plaintiff's abilities and limitations relating to walking, lifting, carrying, pushing, pulling [. . .] and it is unclear whether Dr. Persaud's opinion of limitations would be consistent with a full-range of sedentary work." (Dkt. No. 10 at 20 [Pl.'s Mem. of Law].) The ALJ's RFC addressed each of these factors.

The ALJ limited Plaintiff to sedentary work which encompasses limitations relating to walking, lifting, and carrying in its very definition in the Regulations under 20 C.F.R. §§ 404.1567(a) and 416.967(a). Further, the ALJ's RFC determination limited Plaintiff to <u>less</u> than a full range of sedentary work; and, the ALJ's RFC determination was more restrictive than the limitations placed on Plaintiff by Dr. Persaud. For example, Dr. Persaud opined Plaintiff had no restrictions for sitting and the ALJ provided for a sit/stand option in his RFC determination. (T. 309, 19.) The ALJ did not err in his treatment of Dr. Persaud's medical opinion. The ALJ's RFC determination encompassed many of Dr. Persaud's functional limitations, which when taken together with the other medical opinion evidence in the record, constituted substantial evidence to uphold the ALJ's determination.

**B.     Whether the ALJ Properly Assessed Claimant's Credibility.**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13 at 7-9 [Def.'s Mem. of Law].)  The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff first argues the ALJ erred in his credibility determination by concluding Plaintiff's allegations "are not credible to the extent they are inconsistent with the above [RFC] analysis." (Dkt. No. 10 at 21, *referring to* T. 20 [Pl.'s Mem. of Law].) To be sure, although a "[plaintiff's] credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." *Gehm v. Astrue*,10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); *see also Patterson v. Astrue*,11-CV-1143, 2013 WL 638617, at *14 (N.D.N.Y. Jan. 24, 2013) ("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination."). Therefore, the ALJ did improperly conclude Plaintiff's statements were not credible in that they were inconsistent with the RFC determination; however, this error was harmless.

Courts have concluded that despite this language, an ALJ's credibility determination may still be proper, if the ALJ provided a detailed discussion of a plaintiff's credibility "explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270. Further, it is the function of the ALJ, not the reviewing courts to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the plaintiff. *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). Although the ALJ improperly concluded Plaintiff's statements were not credible because

they were inconsistent with his RFC determination, the ALJ did provide a credibility analysis which allowed this Court to determine the legitimate reasons for the ALJ's disbelief.

Plaintiff argues the ALJ further erred in his credibility analysis by not fully discussing favorable evidence, by improperly focusing on Plaintiff's non-severe impairment of substance abuse, by failing to evaluate pain and symptoms regarding Plaintiff's cervical spine disorder, and by failing to develop the record. (Dkt. No. 10 at 22-25 [Pl.'s Mem. of Law].)

Contrary to Plaintiff's assertions, substantial evidence supports the ALJ's credibility determination. The ALJ discussed and analyzed the medical opinion evidence in the record regarding Plaintiff's cervical and lumbar impairments. (T. 20-21.) The ALJ did not look to the medical evidence as proof positive Plaintiff was completely without symptoms or completely pain free, instead the ALJ reasoned the relief Plaintiff received from injections, medication, surgery, and a spinal cord stimulator allowed him to perform sedentary work. (T. 21.)

The ALJ's RFC analysis did provide for limitations based on Plaintiff's allegations. For example, the ALJ's RFC determination provided for a sit/stand option, so long as Plaintiff did not leave his work station. (T. 19.) This limitation was greater than Dr. Shah's observation that Plaintiff could sit for one hour without interruption (T. 349) and greater than Dr. Persaud's observation that Plaintiff had no restrictions to sitting (T. 309). Plaintiff did however testify he could sit for half an hour to an hour at most. (T. 92-93.) The ALJ took Plaintiff's allegation into consideration when formulating his RFC analysis, particularly regarding his sitting limitations.

Plaintiff next alleges the ALJ "inappropriately focused" on his substance abuse, which was in remission. (Dkt. No. 10 at 23 [Pl.'s Mem. of Law].) As is so often the case, and as the medical evidence in his case showed, Plaintiff's substance abuse problems and mental health conditions were intertwined.

At step two of the sequential process the ALJ determined Plaintiff's impairments of depression and anxiety were non-severe. (T. 17.) The ALJ relied on the medical opinion of Dr. Shah in making his step two determination, because Dr. Shah noted Plaintiff's anxiety increased when Plaintiff self-mediated with alcohol. (T. 18 *referring to* T. 383.) The ALJ also relied on the medical statement from consultative examiner, Sara Long, Ph.D., who opined Plaintiff's substance abuse problems did not significantly interfere with his mental ability to function. (T. 325.) Plaintiff does not allege the ALJ erred in his step two analysis.

Beyond the context of a step two analysis, the ALJ discussed Plaintiff's substance abuse in his RFC determination. The ALJ concluded Plaintiff's mental impairments stemmed from his substance abuse issues, which overall did not restrict his RFC. (T. 21.) The ALJ properly discussed Plaintiff's substance abuse history and its relationship with Plaintiff's mental health impairments, as the medical evidence in the record showed Plaintiff's substance abuse and mental health were linked. The ALJ's discussion of the Plaintiff's substance abuse issues was limited to his mental health claims and there is no indication from the decision the ALJ improperly focused on Plaintiff's substance abuse in any other capacity.

Plaintiff argues the ALJ failed to fully develop the record regarding his mental impairments. (Dkt. No. 10 at 24-25 [Pl.'s Mem. of Law].) The ALJ has an affirmative duty

to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ. . . must on behalf of all claimants ... affirmatively develop the record. . . ." (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 [2d Cir.2009]) (internal quotation mark omitted)).  This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *Moran,* 569 F.3d at 112, (quoting *Lamay*, 562 F.3d at 509). However, reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

Plaintiff argues the ALJ was required to obtain records from his primary care physician as the record indicated the physician prescribed antidepressants. (Dkt. No. 10 at 25 [Pl.'s Mem. of Law].) Plaintiff did not allege disability due to mental impairments in his application nor did he allege mental health impairments to the consultative examiners. (T. 253, 305-306, 325.) Plaintiff alleged his disability stemmed from his back and neck impairments. (T. 91, 253, 325.) At the hearing the ALJ inquired of Plaintiff's counsel if there were any additional records needed, to which Plaintiff counsel stated there were not. (T. 87.) Plaintiff did not indicate in his Disability Report or Activities of Daily Living Report he was taking antidepressants, or any other medication for mental health conditions. (T. 255-256, 271.) Plaintiff did not list his primary care provider as a medical source in his Disability Report. (T. 255.) Further, when questioned at the hearing about his anxiety and depression, Plaintiff testified it affects his concentration and he didn't like crowds, but he didn't have a problem getting along with other people.

(T. 96.) The ALJ did not have a duty to develop the record given that there were no obvious gaps; therefore, because Plaintiff did not allege a disability due to mental impairments, Plaintiff did not indicate he was taking medication for mental impairments, Plaintiff informed the ALJ that the record was complete at the time of the hearing, and the medical evidence indicated Plaintiff had no functional limitations due to mental impairments there were no obvious gaps in the record and the ALJ was under no obligation to develop the record further.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: July 6, 2015
Syracuse, NY

*[signature]*
Glenn T. Suddaby
U.S. District Judge